Concurring Opinion by
POLLACK, J.
I agree with the majority that individual police officers have a significant privacy interest in the information sought in this case. As the majority acknowledges, this interest is plainly defined in the Uniform Information Practices Act (UIPA). The circuit court clearly erred in concluding that the officers *76 in this case have no individual privacy interest in the records at issue. As such, this court must remand the case to the trial court to enable the circuit court to weigh, in the first instance, the significant privacy interests implicated in this case against the public interest in disclosure. Thus, while I concur in the majority opinion, I write separately to clarify my understanding of the analysis that applies when significant privacy interests are implicated.
I.
UIPA effectuates the State’s policy that the formation and conduct of public policy “be conducted as openly as possible.” HRS § 92F-2 (1993). However, the “policy of conducting government business as openly as possible must be tempered by a recognition of the right of the people to privacy.” Id. Accordingly, UIPA recognizes an exception from required disclosure for any government records “which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy.” HRS § 92F-13 (1993).[1]
In section 92F-14, UIPA also expressly provides that disclosure of a government record does not “constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual.” HRS § 92F-14(a) (Supp.1997).[2] Thus, the information “is exempt from the general disclosure requirement unless ‘the public interest in disclosure outweighs the privacy interests of the individual.’ ” State of Haw. Org. of Police Officers v. Soc’y of Prof’l Journalists (SHOPO v. SPJ), 83 Hawai'i 378, 400, 927 P.2d 386, 408 (1996) (emphases added) (quoting HRS § 92F-14(a)).
The application of section 92F-14 varies considerably depending on whether or not the privacy interest is considered “significant.” Id. at 383-84, 927 P.2d at 391-92. “[O]nce a significant privacy interest is found, the privacy interest will be balanced against the public interest in disclosure. If the privacy interest is not ‘significant,’ a scintilla of public interest in disclosure will preclude a finding of a clearly unwarranted invasion of personal privacy.” Id. (quoting Conf. Comm. Rep. No. 112-88, in 1988 House Journal, at 817-18). In other words, where the privacy interest is not considered “significant,” the information will always be disclosed so long as there is a “scintilla” of public interest served by the disclosure of the information. Id. On the other hand, where the privacy interest is considered “significant,” the information “is exempt from the general disclosure requirement unless ‘the public interest in disclosure outweighs the privacy interests of the individual.’ ” SHOPO v. SPJ, 83 Hawai'i at 400, 927 P.2d at 408.
Section 92F-14 provides specific examples of information in which an individual has a “significant privacy interest” and, accordingly, the information is exempt from disclosure unless the public interest in disclosure outweighs the individual’s privacy interest. SHOPO v. SPJ, 83 Hawai‘i at 400, 927 P.2d *77 at 408. As noted by the majority, county police officers have a significant privacy interest in their personnel records, which includes records related to employment misconduct where the officer was suspended but not discharged. This significant privacy interest is apparent from the plain language of section 92F-14.[3]
Police officers have had a significant privacy interest in their employment misconduct records since the legislature amended HRS § 92F-14 in 1995 through Act 242. 1995 Haw. Sess. Laws Act 242, § 1 at 641-42. In addition to specifically providing for this privacy interest, Act 242 also added a new section, HRS § 52D-3.5, requiring that each county police department submit an annual report to the legislature disclosing certain information regarding misconduct that resulted in the suspension or discharge of a police officer.[4] Id. § 3, 642-43. Accordingly, the Honolulu Police Department (HPD) submits an itemized report to the legislature each year detailing the following information regarding each incident of police misconduct that resulted in suspension or discharge: a summary of the facts, the nature of the misconduct, and the disciplinary action imposed.
In this ease, Peer News LLC, doing business as Civil Beat (Civil Beat), requested that HPD release the personnel records related to twelve incidents of misconduct of police officers where the officers were suspended. Civil Beat requested disclosure of what is already included in HPD’s annual report to the legislature in addition to the officers’ names and “findings of facts and conclusions of law.”[5] Following HPD’s denial of its request,[6] Civil Beat sought an order requiring HPD to disclose the requested information in the Circuit Court of the First Circuit (circuit court). The circuit court ultimately ordered HPD to release the records requested by CM Beat. The circuit court did so based on its granting of Civil Beat’s motion for summary judgment.
Fundamental to the circuit court’s decision on the motion for summary judgment was that “police officers have no protected privacy interest regarding on-duty misconduct that results in suspension.” Thus, the circuit court’s conclusion regarding the police officer’s privacy interest in the information at issue in this case was directly contrary to UIPA’s plain language providing that police officers have a significant privacy in such information. Since the circuit court conclud *78 ed that there was “no protected privacy interest,” the court did not apply the proper balancing test that applies where a significant privacy interest is implicated. See SHOPO v. SPJ, 83 Hawai'i at 400, 927 P.2d at 408.
As explained above, the analysis regarding disclosure is fundamentally different depending on whether or not an individual’s “significant privacy interest” is implicated. Where there is no significant privacy interest—and no question of material fact in that regard— as was the case in SHOPO v. SPJ, summary judgment is appropriate in favor of the party seeking disclosure so long as there is some evidence that the public interest would be served by the disclosure. 83 Hawai'i at 383, 927 P.2d at 391 (“If the privacy interest is not ‘significant,’ a scintilla of public interest in disclosure will preclude a finding of a clearly unwarranted invasion of personal privacy.” (quoting Conf. Comm. Rep. No. 112-88, in 1988 House Journal, at 817-18)). In pointed contrast, where there is a significant privacy interest-as there are in the requested records in this case-the information is “exempt” from disclosure unless the public interest outweighs the individual privacy interests. Id. at 400, 927 P.2d at 408. Thus, the analysis that applies in this case is fundamentally different from the analysis applicable in SHOPO v. SPJ, and summary judgment is not appropriate simply because there is some evidence of the public interest in disclosure where there remain material questions of fact as to the content of the records and the individual privacy interests involved.
Accordingly, the circuit court did not apply the proper balancing test in direct contravention to the UIPA statute, and, as the majority concludes, this court must vacate the circuit court’s order and remand the case to the circuit court to apply the proper balancing test in the first instance.[7] See, e.g., Wilart Assocs. v. Kapiolani Plaza, Ltd., 7 Haw.App. 354, 360, 766 P.2d 1207, 1211 (1988) (“[Wjhere findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue,” (alteration in original) (quoting Higdon v. Evergreen Int’l Airlines, Inc., 138 Ariz. 163, 673 P.2d 907, 911 (Ariz.1983))). On remand, the burden is on Civil Beat to establish that the otherwise “exempt” records should be disclosed because the public interest in disclosure outweighs the privacy interest of the individual.[8] The analysis that applies where significant privacy interests are implicated is further discussed in Part II of this opinion.
II.
Through formal opinion letters, the Office of Information Practices (OIP) has provided a framework for determination of whether the public interest in disclosure outweighs the significant privacy interests of the individual. The framework set forth in the OIP opinions, which are authoritative,[9] involves a highly factual analysis that takes into account multiple factors.
The public interest to be balanced against an individual’s significant privacy interest is *79 the public interest in the disclosure of ‘official information that sheds light on an agency’s performance of its statutory purpose’ or ‘upon the conduct of government officials.’ “OIP Op. Ltr. No. 10-03, at 5 (quoting OIP Op. Ltr. No. 92-17).[10] Hence, the OIP identifies two different public interests: (1) the public interest in oversight of government operations and (2) the public interest in monitoring the conduct of individual government employees or officials.
First, “[i]n the context of employment misconduct information, ‘[t]he public interest in disclosure ... generally lies in confirming that the [agency] is properly investigating and addressing questions.” OIP Op. Ltr. No. 1003, at 5 (alterations in original) (quoting OIP Op. Ltr. No. 98-5, at 21). “This interest is not furthered by disclosure of the subject employees’ identities.” OIP Op. Ltr. No. 98-5, at 21 (citing Stern v. F.B.I., 737 F.2d 84, 92 (D.C.Cir.1984)); see also OIP Op. Ltr. No. 10-03, at 5. Accordingly, “the public interest in shedding light on the agency’s operations is generally served by disclosure of the nature of the alleged misconduct and how the agency responded to it, without the name of the concerned employee and other details that could reasonably lead to the employee’s identification.” OIP Op. Ltr. No. 10-03, at 5.[11]
In its memorandum of law supporting its motion for summary judgment, it appears that Civil Beat relied in part on the public’s interest in ensuring the accountability of HPD in addition to the fitness of individual officers. The majority also discusses the public interest in oversight of police departments. See majority at 376 P.3d at 22 (“These eases recognize the compelling public interest in instances of police misconduct given the importance of public oversight of law enforcement.... Public oversight minimizes the possibility of abuse by ensuring that police departments and officers are held accountable for their actions.”). Additionally, all of the cases relied on by the majority in support of its understanding of the public interest discuss that interest in terms of oversight over the operations of police departments in cases where no significant privacy interest of individual police officers were implicated.[12] For this reason, I do not believe that these cases are helpful in understanding the public interest in disclosure in this case. In fact, many states expressly exempt such information from public disclosure [13] or recognize a strong privacy interest as our UIPA statute does.[14]
*80 The second public interest-the interest in oversight of state employees—“is a distinct one.” OIP Op. Ltr. No. 98-5, at 21 (“Courts have identified the public interest in disclosure of the identities of employees as one which lies in holding those public officials accountable for their conduct.” (citing Stern, 737 F.2d at 92); Baez v. U.S. Dep’t of Justice, 647 F.2d 1328, 1339 (D.C.Cir.1980)). In opinion letters that considered “the weight of the public interest in the disclosure of the identity of an employee who is the subject of allegations,” the OIP has looked at multiple factors to aid in its determination. See OIP Op. Ltr. No. 10-03; OIP Ltr. No. 985.
In a 1998 formal opinion letter, the OIP was asked whether Internal Affairs reports regarding several police shootings were required to be publicly disclosed. OIP Op. Ltr. No. 98-5, at 1. Citing to federal cases, the OIP identified several factors that courts have looked to in determining the weight of *81 the public interest: “the rank and level of responsibility of the employee; the activity in question; whether there is evidence of wrongdoing on the part of a government employee; and whether there is any evidence that the government has failed to investigate adequately.” Id. at 21-22 (citations omitted) (citing Stern, 737 F.2d at 92; Hunt v. F.B.I., 972 F.2d 286, 289 (9th Cir.1992)). The OIP also noted that the public interest in disclosure of employee names was diminished where “lower level employees are involved,” and it also noted that the absence of “evidence of employee wrongdoing or that the government has failed to adequately investigate” would also diminish the public’s interest in disclosure. Id. 21-22 (citations omitted) (citing Stern, 737 F.2d at 92; Hunt, 972 F.2d at 289). Of central importance in the 1998 letter was that “[b]ecause of the need to consider the different factors in determining the weight of public interest in disclosure, a determination of the need to disclose the subject employees’ identities must be made on a case-by-case basis.” Id. at 22. In other words, the factors must be applied on an individual-by-individual basis.
In a formal letter opinion in 2010, the OIP confirmed the multi-factor application used by the 1998 letter. The 2010 letter considered whether the Ethics Commission of the City and County of Honolulu should disclose two advisory opinions issued by the Commission in a manner that disclosed the identity of employees and their misconduct. OIP Op. Ltr. No. 10-03, at 1. Because the employees had a significant privacy interest in the information, the opinion considered whether the public interest in disclosure outweighed the interests of the individuals. Id. at 5-9. The 2010 letter cited to the 1998 letter discussed above, noting that it applies “several nonexclusive factors based on federal case law interpreting comparable provisions of the federal Freedom of Information Act.” Id. at 6. The 2010 letter then stated that “[a] recent federal case more fully expounds on the factors courts should consider in this balance, including the factors previously considered by the OIP, and provides a useful framework for such balancing.” Id.
The 2010 letter quoted the following passage from a federal case providing this “useful framework” for the balancing:
In balancing a government employee’s privacy interests against the public’s interest in disclosure, a court should consider several factors, including: (1) the government employee’s rank: (2) the degree of wrongdoing and strength of evidence against the employee; (3) whether there are other ways to obtain the information; (4) whether the information sought sheds light on a government activity; and (5) whether the information sought is related to job function or is of a personal nature. The factors are not all inclusive, and no one factor is dispositive. * * *
(1) Rank of government employee: We adopt the United States Court of Appeals for the District of Columbia’s rule “that the level of responsibility held by a federal employee,” is an “appropriate consideration[ ]” when analyzing disclosure. Stern, 737 F.2d at 92 (ordering release of censure letter issued against a high-level FBI official, but withholding information regarding the disciplining of two low-level FBI employees). * * *
(2) Degree of wrongdoing and strength of evidence against the employee: This factor requires a court to examine the degree of wrongdoing allegedly committed by the employee and the strength of the evidence. Strong evidence of wrongdoing, combined with a serious offense, would weigh in favor of disclosure. Thus, in Stem, the court ordered disclosure where the government employee was “a high-level employee who was found to have participated deliberately and knowingly in the withholding of damaging information in an important inquiry,” 737 F.2d at 93-94, but not for lower-level employees who “were not in any sense directly responsible ... but rather were culpable only for inadvertence and negligence.” Id. at 92.
(3) Availability of other means to obtain the information: This factor examines whether the government is the only means for obtaining the desired information.
(4) Whether the information sought sheds light on government activity: This *82 factor examines whether the information sought furthers FOIA’s main purpose of “opening agency action to the light of public scrutiny,” Rose, 425 U.S. at 372. The more the information sought sheds light on what the government is doing, the more this factor favors disclosure. See Reporters Comm., 489 U.S. at 773 (“Official information that sheds light on an agency’s performance of its statutory duties falls squarely within [FOIA’s] statutory purpose.”).
(5) Whether the information is related to job function, or is of a personal nature: This factor is related to the government activity factor because the purpose of FOIA is to shed light on public rather than private activity. FOIA is not a tool to obtain personal information about government employees. Rather, the disclosed information must relate to the employee’s performance of his public duties.
Id. at 6-7 (quoting Perlman v. U.S. Dep’t of Justice, 312 F.3d 100, 107-08 (2d Cir.2002), vacated on other grounds, 541 U.S. 970, 124 S.Ct. 1874, 158 L.Ed.2d 464 (2004), and aff'd, 380 F.3d 110 (2d Cir.2004)). For guidance purposes, the OIP letter applied each of the factors, ultimately concluding that the public interest did not outweigh the individual privacy interest. See generally id. at 8-9 (applying the factors to a supervisory employee where there was substantial evidence of wrongdoing).
Although Civil Beat’s request is partly premised on the public’s interest in monitoring HPD, Civil Beat additionally seems to argue that the public has a strong interest in monitoring the conduct of individual police officers. The majority also discusses the public’s interest in oversight of individual officers: “Police officers are entrusted with the right to use force—even deadly force in some circumstances-and this right can be subject to abuse. Public oversight minimizes the possibility of abuse by ensuring that police departments and officers are held accountable for their actions.” Majority at 376 P.3d at 22.
While I agree with the majority’s observation that the public interest gains greater weight the more egregious the misconduct, the nature of the particular conduct is but one factor that must be taken into account by the reviewing court. Pursuant to the OIP’s analysis, factors such as the rank of the employee, the strength of the evidence, whether the information sheds light on government activity, and whether the information is related to a job function or of a personal nature will also shape the court’s analysis of the weight and extent of the public interest. It may also be appropriate to consider the current status of the officer, the subsequent conduct of the officer, the age of the record, or other relevant circumstances.[15] See Dep’t of State Police v. Dashiell, 443 Md. 435, 117 A.3d 1, 13 (Md.2015) (“[T]here is a ‘significant public interest in maintaining confidentiality,’ when the officer is cleared of wrongdoing.” (quoting Montgomery Cty. v. Shropshire, 420 Md. 362, 23 A.3d 205, 216 (Md.2011)). Thus, the public’s interest in disclosure in order to hold an individual police officer accountable for his or her conduct may be significantly diminished if the officer is retired, was subsequently acquitted of the conduct, or is no longer serving as an armed officer. Accordingly, the severity of the conduct does not necessarily determine the weight of the public interest because other relevant factors may affect the public’s interest in disclosure.
Application of the OIP’s multi-factor analysis, is supported by the legislative history of Act 242. To be sure, the legislative history of Act 242 demonstrates overwhelmingly that the legislature understood that “significant privacy interests” would be given significant weight, requiring a showing that the public interest does indeed outweigh the individual privacy interests. In enacting Act 242, the legislature was keenly aware that Act 242 would significantly decrease the likelihood of disclosure of information regarding police suspensions. A joint committee report by the Senate Committee on Judiciary and the Senate Committee on Agriculture, Labor, and Employment stated, “Your Committees recognize that there may be some serious eases of police misconduct which will not rise *83 to the level of criminal conduct, and it is this group of cases that posed the greatest challenge to the committees.” Sen. Comm. Rep. No. 627, in 1995 Senate Journal, at 1064. In order to address this concern, the legislature chose to “exercise oversight over those cases involving officers suspended” by requiring county police departments to submit annual reports that involve violations of the most serious conduct-malicious use of physical force, cowardice, mistreatment of prisoners, and use of drugs and narcotics. Id.; see also Conf. Comm. Rep. No. 171, in 19950 Senate Journal, at 794.
In responding to SHOPO’s argument that a committee report regarding Act 242 demonstrates an intent to absolutely prevent disclosure unless the officer has been discharged, the majority observes that “the clear concern of the House committee was that requiring disclosure of disciplinary suspension records in all cases would lead to the disclosure of officers’ names for rule violations.” See majority at 83, 376 P.3d at 19. While the legislature was indeed concerned with avoiding disclosure of the identities of officers disciplined for relatively non-serious misconduct, the plain language of the Act and legislative history of Act 242 demonstrates that this was not the legislature’s sole or even primary concern. First, the plain language of the statute gives county police officers a significant privacy interest in personnel records for all misconduct that does not result in discharge. If the legislature intended to only create a significant privacy interest in instances of minor misconduct, then it easily could have done so.[16] Moreover, the legislative history demonstrates that the legislature’s concern was much broader. The committee report appears to have been concerned with tough disciplinary measures in general rather than as specifically applied in cases of minor rule violations.[17] The joint Senate committee report found it “start[ed] from the premise that because police work is unlike any other, because their standards of discipline are much stricter and because their contact with the public is daily and constant, police officers should be treated differently than other public employees.” Sen. Comm. Rep. No. 627, in 1995 Senate Journal, at 1064.[18] The legislative history also suggests it was significant to the legislature that the county police commissions oversee the conduct of the police departments and their officers. House Comm. Rep. No. 1584, 1995 House Journal, at 1627.[19] Other than noting that a police officer may be suspended for anything from misconduct to a rule violation, the legislative history does not suggest that the only concern of the legislature was in keeping information related to minor rule violations confidential.
*84 Accordingly, while the seriousness of the misconduct is an important consideration, multiple factors must be taken into account in determining the weight of the public interest where disclosure of private information is sought for purposes of monitoring an individual officer’s conduct. Additionally, in considering whether the public interest in disclosure outweighs the individual privacy interest, the court’s determination will require a case by case analysis of the circumstances in each case to properly ascertain both the public interest in disclosure and the individual’s significant interest in privacy.
III. CONCLUSION
UIPA specifically provides that the information sought in this case implicates significant privacy interests, and it is well established that this information “is exempt from the general disclosure requirement unless ‘the public interest in disclosure outweighs the privacy interests of the individual.’ ” SHOPO v. SPJ, 83 Hawai'i at 400, 927 P.2d at 408 (quoting HRS § 92F-14(a)). Accordingly, the agency has established a justification for nondisclosure of the records, and the burden shifts to Civil Beat to establish that the public interest in disclosure outweighs the privacy interests of the individuals. On remand, the circuit court should carefully consider whether Civil Beat has established that the public interest outweighs the significant privacy interest of each individual officer in light of the applicable factors and the relevant information presented to the court.

. HRS § 92F-13 provides, "This part shall not require disclosure of: (1) Government records which, if disclosed, would constitute a clearly unwarranted invasion of personal privacy....”

. HRS § 92F-14 provides the following in relevant part:
(a) Disclosure of a government record shall not constitute a clearly unwarranted invasion of personal privacy if the public interest in disclosure outweighs the privacy interest of the individual.
(b) The following are examples of information in which the individual has a significant privacy interest:
[[Image here]]
(4) Information in an agency’s personnel file, or applications, nominations, recommendations, or proposals for public employment or appointment to a governmental position, except:
[[Image here]]
(B) The following information related to employment misconduct that results in an employee’s suspension or discharge:
(i) The name of the employee;
(ii) The nature of the employment related misconduct;
(iii) The agency’s summary of the allegations of misconduct;
(iv) Findings of fact and conclusions of law; and
(v) The disciplinary action taken by the agency;
... provided that this subparagraph shall not apply to a county police department officer except in a case which results in the discharge of the officer; ....

. HRS § 92F-14 lists "examples of information in which the individual has a significant privacy interest.” This includes information in personnel files; except, in subparagraph (b)(4)(B), it provides that there is no significant privacy interest in certain information "related to employment misconduct that results in an employee's suspension or discharge”—name, nature of misconduct, summary of allegations, findings of fact and conclusions of law, and the subsequent disciplinary action. However, subparagraph (b)(4)(B) continues: "provided that this subpara-graph shall not apply to a county police department officer except in a case which results in the discharge of the officer.” Thus, subparagraph (b)(4)(B) only applies to county police officers who have been discharged because of the misconduct; otherwise, subparagraph (b)(4)(B) does not apply to county police officers. Consequently, police officers have a significant privacy interest in their personnel files, including information related to employment misconduct that results in suspension. See supra note 2.

. HRS § 52D-3.5 (2012) provides
The chief of each county police department shall submit an annual report to the legislature twenty days prior to the convening of the regular session in each year. The report shall include a summary of the facts and the nature of the misconduct for each incident which resulted in the suspension or discharge of a police officer, the disciplinary action imposed for each incident, and the number of police officers suspended and discharged during the previous year under the following categories of the department’s Standards of Conduct:
(1) Malicious use of physical force;
(2) Mistreatment of prisoners;
(3) Use of drugs and narcotics; and
(4) Cowardice.
The summary of facts shall not be of such a nature so as to disclose the identity of the individuals involved.

. Civil Beat requested documents sufficient to provide the following: the officer’s name, the nature of the misconduct, HPD’s summary of the allegations of misconduct, "findings of fact and conclusions of law,” and the disciplinary action taken by the agency.

. HPD denied Civil Beat’s request based on HRS § 92F—13(1 )'s prohibition of an unwarranted invasion of privacy and because the requested misconduct did not result in discharge, citing to HRS § 92F-14(4).

. I also agree with the majority’s conclusion that OIP Opinion Letter 97-01 is palpably erroneous. The letter misapprehends the legal significance of SHOPO v. SPJ in relation to Act 242 and does not appreciate the legal standard that applies where significant privacy interests are implicated.

. UIPA imposes an affirmative responsibility on the agencies to make government records available for inspection and copying upon request by any person. SHOPO v. SPJ, 83 Hawai'i at 393, 927 P.2d at 401, Consistent with the purpose of UIPA and the responsibility of agencies to conduct business as openly as possible, UIPA places the burden on the agency "to establish justification for nondisclosure.” HRS § 92F-15 (2012). Once the government establishes that an individual has a significant privacy interest in the requested information, the agency satisfies its burden of establishing a justification for nondisclosure under HRS § 92F-15. The burden then shifts to the requester of the documents to establish that the public interest in disclosure outweighs the individual privacy interest. See SHOPO v. SPJ, 83 Hawai'i at 400, 927 P.2d at 408; see also HRS § 92F-14. Undoubtedly, if the two interests were to balance equally, the individual privacy interest would prevail because the public interest must outweigh the individual interest. See SHOPO v. SPJ, 83 Hawai'i at 400, 927 P.2d at 408.

."Opinions and rulings of the office of information practices ... shall be considered as precedent unless found to be palpably erroneous ...” HRS § 92F—15(b) (2012),

. See also OIP Op. Ltr. No. 90-17, at 7 (“Like the federal Freedom of Information Act, one of UIPA’s core purposes 'focuses on the citizen's right to be informed about what their government is up to and about the conduct of government officials.' ” (citation omitted) (quoting U.S. Dep’t of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)).

. See also OIP Ltr. No. F13-01, at 21 n. 15 ("OIP previously concluded in the context of employment misconduct information, '[t]he public interest in disclosure ... generally lies in confirming that the [agency] is properly investigating and addressing questions.’" (alterations in original) (quoting OIP Op. Ltr. No. 10-03, at 5)).

. See majority at 73, 376 P.3d at 21 ("In SHOPO v. SPJ, this court recognized that 'the appropriate concern of the public as to the proper performance of public duty is to be given great weight' when balanced against competing privacy interests.” (quoting SHOPO v. SPJ, 83 Hawai'i at 399, 927 P.2d at 407)); majority at 73, 376 P.3d at 21-22 (''[T]he Supreme Court of Vermont explained that substantial weight should be given to the public interest in disclosure because 'there is a significant public interest in knowing how the police department supervises its employees and responds to allegations of misconduct.' ” (quoting Rutland Herald, 84 A.2d at 825)); majority at 74, 376 P.3d at 22 ("[T]he Connecticut Appellate Court ... emphasized the need to 'facilitate the public's understanding and evaluation of the [department's] investigative process, decision-making and overall handling of an important matter involving a fellow police officer.' ” (third alteration in original) (quoting Tompkins, 46 A.2d at 299)); majority at 74, 376 P.3d at 22 ("[T]he Louisiana First Circuit Court of Appeal ... reasoned that '[t]he public should be ensured that both the activity of public employees who investigate the suspects is open to public scrutiny.' " (third alteration in original) (quoting Capital City Press, 4 So.3d at 821). It is noted that none of these cases concerned significant privacy interests.

.The laws of several states specifically provide that police personnel files are not subject to disclosure under state freedom of information acts. See Cal.Penal Code § 832.7 (providing police personnel records are confidential except for investigations or proceedings conducted by a grand jury, a district attorney's office, or the Attorney General's office); Del.Code Ann. tit. 11, § 9200(c)(12) (providing that all records compiled as a result of an investigation of a law- *80 enforcement officer “shall be and remain confidential and shall not be released to the public”); Union Leader Corp. v, Fenniman, 136 N.H. 624, 620 A.2d 1039, 1041 (N.H.1993) (holding that documents compiled during internal investigation of police lieutenant accused of making harassing phone calls were records "pertaining to internal personnel practices” within the meaning of New Hampshire’s Right-to-I<now Law and, thus, were exempt from disclosure); N.Y. Civ. Rights Law § 50-a (providing that "all personnel records used to evaluate the performance toward continued employment or promotion” of police officers “shall be considered confidential and not subject to inspection or review without the express written consent of the officer"); Harmon v. Ewing, 285 Va. 335, 745 S.E.2d 415, 417 (Va.2013) (holding that personnel records or conduct investigative records regarding police officers are exempt from disclosure under Virginia’s Freedom of Information Act, which exempts personnel records from disclosure).
Many other states exempt personnel records of public employees from disclosure under state freedom of information acts, which would likely include the personnel records of police officers. See Idaho Code § 74-106 (exempting all personnel records of current or former public officials except for "employment history, classification, pay grade and step, longevity, gross salary and salary history, status, workplace and employing agency”); Iowa Code Ann. § 22.7 (exempting from public disclosure “personal information in confidential personnel records of government bodies relating to identified or identifiable individuals who are officials, officers, or employees of the government bodies”); Miss.Code. § 25—1— 100 (exempting personnel records from public disclosure); Neb.Rev.Stat. Ann. § 84-712.05(7) (providing that the following may be withheld from the public: "[pjersonal information in records regarding personnel of public bodies other than salaries and routine directory information”); N.J. Stat. § 47:1A-10 (providing that personnel records "including but not limited to records relating to any grievance filed by or against an individual, shall not be considered a government record and shall not be made available for public access”); 65 Pa. Stat. § 67.708 (exempting "from access by a requester” "[(Information regarding discipline, demotion or discharge contained in a personnel file” unless the final action results in demotion or discharge); S.D. Codified Laws § 1-27-1.5 (providing that "[p]ersonnel information other than salaries and routine directory information” are not subject to disclosure); Wyo. Stat. § 16-4-203 (exempting personnel records from required disclosure and specifically exempting "[rjecords or information compiled solely for purposes of investigating violations of, and enforcing, internal personnel rules or personnel policies the disclosure of which would constitute a clearly unwarranted invasion of personal privacy”).

. Colo.Rev.Stat. § 24-72-204(2)(a)(I) and (3)(a)(II) (providing that inspection of records may be denied with regard to records conducted for any law enforcement purpose and also providing that inspection of records shall be denied of personnel files); D.C.Code § 2-534 (exempting from disclosure records of "investigations conducted by the Office of Police Complaints” where disclosure would "constitute an unwarranted invasion of personal privacy”); Kan. Att'y Gen. Op. No. 06-8 (Mar. 16, 2006) (explaining that personnel records are generally exempt from disclosure, discussing "heightened concerns about privacy due to safety and work considerations," and noting that “there may be specific situations wherein the privacy right in such information has been waived by a specific employee, or where the public interest in such information outweighs the privacy concerns”); Mich. Comp. Laws § 15.243(1)(s)(ix) (“A public body may exempt from disclosure ... [u]nless the public interest in disclosure outweighs the public interest in nondisclosure in the particular instance, public records of a law enforcement agency, tire release of which would ... [djisclose personnel records of law enforcement agencies. ...”); Nev. Admin. Code 284.718 (treating as confidential "[i]nformation in the file or record of employment of a current or former employee which relates to the employee’s "[c]on-duct, including any disciplinary actions taken against the employee”); Or.Rev.Stat. § 192.501 (exempting from disclosure "[a] personnel discipline action, or materials or documents supporting that action” "unless the public interest requires disclosure in the particular instance”).

. Civil Beat requested records regarding specific incidences of employment misconduct listed in HPD’s annual disclosure to the legislature from as far back as 2003.

. In requiring the police departments to report to the legislature for particular categories of misconduct, Act 242 specifically incorporated the misconduct classified as Category A conduct by the HPD's Standards of Conduct. See HRS § 52D-3.5 (2012). The legislature could have readily included within HRS § 92F-14(b)(4)(B) those same categories of misconduct.

. See House Comm. Rep. No. 1584, 1995 House Journal, at 1627 ("Your Committee further finds that the use of such tough disciplinary measures is accepted by most officers because they realize the necessity for strict regulation of the broad powers they wield."); see also Sen. Comm. Rep. No. 627, in 1995 Senate Journal, at 1064 ("Incidents of police misconduct are appropriately addressed internally, and most often officers committing acts of misconduct are either routinely disciplined to the fullest extent of departmental rules and the law or referred to the prosecuting attorney for criminal prosecution.”).

. The report also states the following in relevant part;
Your Committees find that police officers perform an important and highly specialized form of public service. The duties they carry out are unlike those performed by any other public servant. The nature of law enforcement work is extremely dangerous; it is often physical, invariably stressful, and highly confrontational; and the problems and situations encountered by police officers on a daily basis are difficult for individuals other than police officers to fully appreciate. Nonetheless, officers must fulfill the difficult responsibilities required of them by the public in a way that fosters trust, confidence, and respect toward the institution.
Sen. Comm. Rep. No. 627, in 1995 Senate Journal, at 1064.

."Your Committee also finds that, unlike most government agencies, there is an independent body set up outside of the Police Department which is specifically charged with overseeing the conduct of the department and its officers." House Comm. Rep, No. 1584, 1995 House Journal, at 1627.