[No. 38186.   Department Two.   August 25, 1966.]

HENRY OPENDACK *et al., Appellants,* v. SYLVESTER MADDING *et al., Respondents.*\*

*Opendack & Alfieri* and *Henry P. Opendack,* for appellants.

*Ferris & Fox* and *Richard A. Fox*, for respondents.

DONWORTH, J.—Plaintiffs appeal from the judgment of the trial court dismissing plaintiffs' petition for a permanent injunction and dissolving a temporary injunction against defendants. The temporary injunction forbade the further construction of an accessory building on defendant Madding's city residential property, which is immediately up-

\*Reported in 417 P.2d 849.

hill from and adjacent to plaintiffs Opendacks' residence. The temporary injunction remains in effect during this appeal, according to the record of the trial court.

The Opendacks and Mr. Madding live in an area which is zoned RS 5000. In such an area, the zoning ordinances of the city of Seattle permit the erection of an accessory building in the back yard of such residential lots if the building conforms to the following provision:

26.44.060 Yard—Exceptions permitting accessory buildings to certain required yards in R zones. (a) A one *Story Garage, Carport* or other permitted *Accessory Building* not over twelve feet in height and not over one thousand square feet in area may be erected in a *Rear Yard,* . . . .

The definitions in the zoning code provide:

26.06.030 . . .

BASEMENT. That portion of a *Building* between floor and ceiling which is partly below and partly above the *Grade* but so located that the vertical distance from the *Grade* to the floor below is less than the vertical distance from *Grade* to ceiling. A *Basement* shall be counted as a *Story.*

26.06.040 . . .

CELLAR. That portion of a *Building* between floor and ceiling which is fully below *Grade* or partly below and partly above *Grade* but so located that the vertical distance from the *Grade* to the floor below is more than the vertical distance from the *Grade* to ceiling. A *Cellar* shall not be counted as a *Story.*

26.06.090 . . .

HEIGHT OF BUILDING. The vertical distance from the *Lot Grade* of the *Building* to the highest point of the coping of a flat roof or to the deckline of a mansard roofed *Building* or to the point which is located one-half (½) the distance between the plate line and the ridge line of the highest gable of a pitch or hipped roofed *Building.*

December 26, 1963, Mr. Madding obtained (through his builder or architect) a building permit from the city of Seattle which authorized the construction of a three-car garage at the alley level (at the rear of the lot) with a hobby shop above the garage. The single-car garage on the

site of the new building was taken down, and one side wall of the old garage was used in part for the new garage. The lots in this area slope sharply from the house down toward the alley. The entrance to the garage is at alley level facing the alley. The entrance to the hobby shop on the upper level is a foot or two above the lot facing the house.

At the start of the construction, Mr. Opendack inquired about the nature of the building to be erected. He was told it would be a 3-car garage. He was not told about the hobby shop above the garage. At the time when the construction was started, he had no objection to a 3-car garage on the premises—in fact he considered this a welcome change, since defendant Sylvester Madding and his brother and sister, who also live with him, own a total of three cars which had been parked in front of the Madding house most of the time, and since the single-car garage was quite old and would not accommodate a modern car.

When the builder started the second level of construction on the garage, Mr. Opendack again inquired, and was informed about the hobby shop. After checking the plans and the building permit, Mr. Opendack then checked with the city engineer's office. Thereafter, he instituted an action against Mr. Sylvester Madding and the builder, Phillip H. Darland, doing business as Pacific Home Remodeling Company, to enjoin the construction of the hobby shop. He also included the city of Seattle as a defendant, but the city was later dismissed from the suit at the motion of appellants. The complaint asked for a temporary injunction to stop the construction and a permanent injunction to prevent the construction of this additional level of the building which was to be the hobby shop.

By the time appellants' motion for a temporay injunction could be brought on for hearing, on January 16, 1964, 6 days after it was filed, the exterior shell of the building was nearly completed. The upper level framing was finished and the rafters of the roof were installed. The roof was not yet "sheeted" with wood, but the exterior wall "sheeting" was in place.

After the hearing, at which testimony by Mr. Darland, the builder, was received, and photographs taken by Mr. Opendack's family were admitted in evidence, and counsel for both sides had argued, the trial court granted the temporary injunction. Due to a misunderstanding between defendants' counsel and the court, Mr. Darland understood that he would be permitted to finish the roof in order to protect the building from damage by rain. By the time the misunderstanding was cleared up, the sheeting had been placed on the roof, but the tar surface had not been applied. There being no statements in the record to the contrary, we assume that the upper level of the building at the present time remains at this stage of completion. For purposes of this suit, the significance of this situation is that the building has reached its full height.

Under the provisions of the ordinance quoted above, the building must comply with two requirements. First, it must be only one "story." Second, it must not be more than 12 feet in height.

A trial on the merits as to the issuance of the permanent injunction was held on October 15, 1964, before a different judge from the one who held the original hearing on the temporary injunction.

At this trial, the trial court (sitting without a jury), after hearing additional evidence, determined that the building complied with the zoning code. It later made findings of fact and conclusions of law and rendered judgment dismissing the complaint with prejudice, and dissolving the temporary injunction.

Appellants have assigned four errors. The first assignment of error reads:

1. Conclusions of Law II and IV are not supported by the Findings of Fact.

These conclusions read:

II. That said structure does not constitute a violation of the Zoning Ordinance of the City of Seattle.

. . . . .

IV. That the building [permit] as issued by the City

of Seattle on December 26, 1963, was issued in accordance with the Zoning Ordinances of the City of Seattle.

Assignment of error No. 2 reads:

Finding of Fact X is not supported by the evidence.

It reads:

"That the lower compartment of said structure, according to the plans as admitted in evidence herein, falls under the definition of 'cellar' as set forth in said ordinance, and within the 12 feet height limit of the zoning code."

The question here is assuming said building is a one story building, is the building within the twelve (12) feet height limit of the code?

First, with regard to assignment of error No. 1, it is obvious that finding of fact No. 10, on the initial reading, does not make a finding as to the height of the building from "lot grade," or, as one witness phrased it, the "average finished grade" of the building. The finding makes reference only to the "cellar." Therefore, assignment of error No. 1 has merit.

Second, the builder and the witness from the city engineering office testified as to the proper method of measuring height under the ordinance, but then read the plans which measure the height of the building on only the side walls on each side of the building instead of averaging the grade levels measured at the center of each of the four walls, as required by the ordinance. The only testimony of the witness from the engineering office which referred to the averaging of the grades of the four walls pertained to the determination of whether or not the lower level on which the garage was located was a cellar or a basement.

Furthermore, there is no indication in the record that the definition of the "height of building" as defined in 26.06.090 was followed in order to determine properly the point on the building from which the distance to the average finished grade was to be measured to determine the height of the building. (See ordinance quoted above.) It appears to us that this requires merely a mathematical computation of no

great difficulty, if the proper evidence is available. The trial court's oral opinion states that the evidence appears to show that the building is within the 12-foot height limitation (even though finding of fact No. 10 does not so find). This may be true, but this factual matter does not involve the weighing of conflicting testimony concerning measurements or a disputed interpretation of plans. All that is required is to follow the formula for determining the height of a building as set out in the zoning code. Finding of fact No. 10 is not based on that formula.

Because of this error on the part of the trial court, we cannot decide the question raised by appellants' assignment of error No. 2, that finding of fact No. 10 is not supported by the evidence. Consequently, we must vacate the judgment and remand the case to the trial court because of the inadequacy of material findings of fact. See *Bowman v. Webster*, 42 Wn.2d 129, 253 P.2d 934 (1953); *Gnash v. Saari*, 44 Wn.2d 312, 267 P.2d 674 (1954).

The other assignments of error made by appellants need not be discussed, because it seems to us that they depend on our decision as to assignment of error No. 2.

The judgment of the trial court is hereby vacated and the case remanded to the trial court to make a proper finding of fact on the issue of the height of the building as defined by the zoning code and judgment consistent therewith. This may be done on the present record, or, if the trial court deems it advisable, the court may take such additional evidence material to this issue as it feels is appropriate. Any aggrieved party may appeal from the judgment. Costs will abide the final disposition of the case, as permitted by Rule on Appeal 55(b) (1). It is so ordered.

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.