WILART ASSOCIATES, a Hawaii general partnership, Plaintiff-Appellant, *v.* KAPIOLANI PLAZA, LIMITED, a Vanuatu corporation, Defendant-Appellee, and JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10, and ROE GOVERNMENTAL ENTITIES 1-10, Defendants, and KAPIOLANI PLAZA, LIMITED, a Vanuatu corporation, Third-Party Plaintiff-Appellee, *v.* ARTHUR N. WIENER and WILMER C. MORRIS, Third-Party Defendants-Appellants, and WILART ASSOCIATES, a Hawaii general partnership, ARTHUR N. WIENER and WILMER C. MORRIS, Fourth-Party Plaintiffs-Appellants, *v.* EDWARD M. REINHART, Fourth-Party Defendant-Appellee

NO. 12068

(CIVIL NO. 84-1452)

DECEMBER 12, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

This is an action involving a contractual dispute relating to the purchase and redevelopment of commercial property. After a bench trial, the lower court found in favor of defendant, counter-claimant, and third-party plaintiff Kapiolani Plaza, Limited (Kapiolani) and fourth-party defendant Edward M. Reinhart (Reinhart), and against plaintiff, counterclaim defendant, and fourth-party plaintiff Wilart Associates (Wilart), and third-party defendants and fourth-party plaintiffs Arthur N. Wiener (Wiener) and Wilmer C. Morris (Morris).[1] Wilart, Wiener, and Morris (collectively Wilart unless the context indicates otherwise) appeal from the judgment and supplemental judgment of the lower court.

Wilart contends on appeal that the case should be remanded for a new trial because of errors committed below. We hold that certain crucial conclusions of law of the lower court were based on inadequate findings of fact. We therefore vacate the judgment and supplemental judgment, remand the case, and direct the lower court to enter amended findings of fact and conclusions of law, together with an appropriate judgment.

I.

On February 5, 1982, Wilart and Kapiolani entered into a two-part contract, consisting of an Offer to Purchase Real Property (Purchase Agreement) and a Redevelopment Agreement, regard-

---

[1] Arthur N. Wiener and Wilmer C. Morris are the general partners of Wilart Associates (Wilart), a Hawaii general partnership.

ing a leasehold property located on the makai-Ewa (southwest) corner of the Kapiolani Boulevard and McCully Street intersection in Honolulu. Under the contract, Kapiolani would purchase the leasehold and Wilart would redevelop the property into a shopping center.

The Purchase Agreement specified that (1) Wilart would assign a sublease (Sublease) relating to the property, executed between Chun Hoon, Ltd. (Chun Hoon) and DFI Financial, Inc. (DFI), to Kapiolani,[2] and additionally obtain a 63-year wraparound lease for the property from Hawaiian Trust Company, Limited (Hawaiian Trust)[3] for a total consideration of $430,000 and (2) Wilart's duties and obligations under the Redevelopment Agreement[4] were to be "accomplished or waived not later than September 1, 1982." Exhibit P24 at 1-2.

Article Five of the Redevelopment Agreement provided that Wilart would be paid $50,000 for performance of its duties thereunder and, also, would be entitled to receive a bonus fee on February 1, 1983, subject to the condition that the project was "certified complete" by the project architect on or before that date. Exhibit P20 at 4. Section 5.3 of the Redevelopment Agreement specified the manner in which the bonus fee was to be calculated. Under Section 5.3, the fee would be equivalent to 13% of the "stabilized rent" for the period from January 1, 1983 through December 31, 1983, less the "total cost of reconstruction-development" and the purchase price of $430,000 for the leasehold. *Id.* at 4.

---

[2] Wilart first had to acquire the sublease from DFI Financial, Inc.

[3] Hawaiian Trust Company, Ltd. is the trustee for the Ethel Dolly Gibson Estate, the fee owner of the property.

[4] Under the Redevelopment Agreement, Wilart's duties and obligations included (1) the selection of a project architect, general contractor, and civil and soils engineer acceptable to Kapiolani Plaza, Limited (Kapiolani), and the negotiation of appropriate contracts with each; (2) the obtaining of necessary permits and licenses from governmental authorities for the construction of the improvements; (3) the supervision of the construction of the improvements; (4) the approval of payments from proceeds of construction financing or funds provided by Kapiolani; and (5) the completion of the construction of the improvements by the general contractor, subcontractors, and others responsible for such construction in a good and workmanlike manner.

On April 6, 1982, Wilart purchased the Sublease from DFI for $330,000. On the same date, Kapiolani entered into a 63-year wraparound lease with Hawaiian Trust. On August 11, 1982, Wilart assigned the Sublease to Kapiolani for $430,000.

The redevelopment project was not substantially completed by September 1, 1982—in fact, a general contractor for the project had not been retained prior to that date. On September 1, 1982, Kapiolani executed a construction contract with Sandwich Islands Construction, Ltd. (Sandwich Islands), the general contractor. The actual construction work commenced in January 1983.[5]

In late January 1983, Wilart demanded payment of the bonus fee, but Kapiolani refused to pay it. On January 31, 1983, Kapiolani wrote Wilart a letter proposing to extend the date "to establish the stabilized rental income for 1983" from February 1, 1983 to June 30, 1983. Exhibit P70. Although the letter required Wilart's signed acceptance of the extension, Wilart failed to sign and return the letter to Kapiolani. In late May 1983, at Wiener's request, Georges Pochet, a representative of Kapiolani, met with Wiener, Morris, and Reinhart to discuss the calculation of the bonus fee, but nothing was resolved.

A certificate of substantial completion covering Sandwich Islands' work was issued on May 9, 1983.[6] After a mechanic's lien filed by Sandwich Islands was withdrawn on August 12, 1983, the project was certified by the project architect as having been completed in accordance with the applicable provisions of the Redevelopment Agreement on August 15, 1983.

Kapiolani paid Wilart its developer's fee of $50,000 as specified in the Redevelopment Agreement. However, Kapiolani never paid Wilart a bonus fee.

On November 5, 1984, Wilart sued Kapiolani, alleging breach of the Redevelopment Agreement and seeking payment of the bonus fee, punitive damages for "tortious breach of contract," and treble damages for unfair and deceptive trade practices.

---

[5] The building permits for the project were not obtained until January 7, 1983.

[6] The owner's notice of completion of contract was published on May 11 and 18, 1983, and an affidavit of publication was filed with the First Circuit Court on May 23, 1983.

On December 19, 1984, Kapiolani answered and counter-claimed. On January 8, 1985, Kapiolani filed a third-party complaint against Wiener and Morris. On July 18, 1985, Kapiolani filed an amended counterclaim and an amended third-party complaint. The amended counterclaim basically alleged breach of contract by Wilart and sought damages and reimbursement of certain costs. The amended third-party complaint generally alleged the same grounds set forth in the amended counterclaim.

On September 11, 1985, Wilart, Wiener, and Morris filed a fourth-party complaint against Reinhart, alleging Reinhart's liability as a co-developer and seeking "indemnification, reimbursement or contribution" from him. Record, Vol. 2 at 45.

After a 23-day trial, the lower court entered its findings of fact (FOF) and conclusions of law (COL) on January 26, 1987. Pursuant to the FOF and COL, on February 10, 1987, the lower court entered a judgment in favor of Kapiolani and against Wilart, Wiener, and Morris, jointly and severally, for $285,753.26 and dismissed the complaint and fourth-party complaint with prejudice. On the same date, a supplemental judgment awarding Kapiolani $191,438.31 for attorneys' fees and $15,454.88 for costs was filed.

## II.

Wilart contended below that any " 'breaches' by [Wilart] in the course of the performance were waived by [Kapiolani], or [Kapiolani] is estopped from asserting them." Record, Vol. 5 at 139-40. The lower court, however, found in FOF 16, 21, 22, and 23 as follows:

> 16. Wilart failed to complete construction of the project by September 1, 1982 as warranted under the Offer to Purchase Real Property. Although the parties continued to work on the project there was no agreement to waive the September 9, 1982 construction completion date.
>
> \* \* \*
>
> 21. There was no agreement to extend or otherwise modify the condition in the Bonus Fee Provision that the project be certified complete in accordance with § 1.2 of the Redevelopment Agreement by February 1, 1983.

22. There was no agreement to waive the February 1, 1983 certification date with respect to the bonus fee.

23. The period to be used for the computation of the 1983 stabilized lease rent under the Bonus Fee provision was January 1, 1983 through December 31, 1983, as measured. by leases executed prior to December 31, 1982, and there was no agreement to extend, waive or otherwise modify that period.

Record, Vol. 8 at 116-17. Based on these findings, the lower court concluded in COL 2 that "Wilart is not entitled to recover any bonus fee from Kapiolani[;]" in COL 3 that "as a result of the non-occurrence of that [February 1, 1983] condition precedent, Wilart is not entitled to any bonus fee[;]" and in COL 4 that the 1983 stabilized rent "was not sufficient to result in a bonus under the formula in [§ 5.3 of the Redevelopment Agreement]." *Id.* at 119-20.

The findings in question indicate that there was no waiver because "there was no agreement" to do so. Wilart contends that since waiver can be "implied by law from the acts, words, conduct, or failures to act under the circumstances[,]" FOF 16, 21, 22, and 23 are erroneous and, therefore, COL 2, 3, and 4, which are based on those findings, are wrong. We hold that FOF 16, 21, 22, and 23 are not erroneous, but that those findings, standing alone, are inadequate to support COL 2, 3, and 4.

A.

Our supreme court has defined the term "waiver" as follows:

"Waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of such surrender, and it is not essential to its application that prejudice results to the party in whose favor the waiver operates."

*Hewahewa v. Lalakea,* 35 Haw. 213, 219 (1939) (quoting *United States Fidelity & Guar. Co. v. Miller,* 237 Ky. 43, 47, 34 S.W.2d 938, 940 (1931)). Thus, a waiver "may be expressed or implied[,]" and "[i]t may be established by express statement or agreement, or by acts and conduct from which an intention to waive may reasonably be

inferred." 28 Am. Jur. 2d *Estoppel and Waiver* § 160 at 845 (1966) (footnotes omitted). *See also Stewart v. Spalding,* 23 Haw. 502, 516 (1916).

In FOF 16, 21, 22, and 23, the lower court merely found "no agreement" to waive by Kapiolani. The court made no findings on the issue of implied waiver by Kapiolani. We therefore conclude that the lower court incorrectly assumed that waiver could only be effected by agreement. The lower court did not consider that a waiver reasonably could be inferred from Kapiolani's acts and conduct, and thus failed to make findings in this regard.

Accordingly, FOF 16, 21, 22, and 23, without additional findings that there was no implied waiver, cannot sustain COL 2, 3, and 4.

## B.

"[W]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." *Higdon v. Evergreen Int'l Airlines, Inc.,* 138 Ariz. 163, 167, 673 P.2d 907, 911 (1983) (citation omitted), *appeal after remand,* 149 Ariz. 461, 719 P.2d 1077 (Ct. App. 1985), *vacated,* 149 Ariz. 452, 719 P.2d 1068 (1986). *See also Opendack v. Madding,* 69 Wash. 2d 171, 417 P.2d 849 (1966). We hold that this general rule is also applicable where conclusions of law are infirm because they are based on inadequate findings of fact resulting from an erroneous view of the law. In this situation a remand is proper unless the record clearly indicates no implied waiver by Kapiolani.

Our review indicates that the record contains evidence, if deemed credible by the lower court, from which a waiver by Kapiolani of the September 1, 1982 completion deadline and the February 1, 1983 certification date for the bonus fee, as well as a modification of the "stabilized rent" period, may reasonably be inferred.

Therefore, a remand is proper for determination by the lower court as to whether Kapiolani impliedly waived the above dates and time period.

### III.

On February 5, 1982, Kapiolani and Reinhart executed a redevelopment agreement which imposed on Reinhart obligations identical to those imposed on Wilart under its Redevelopment Agreement. Wilart contended below that Reinhart was a "joint or codeveloper[ ] for the project" with Wilart. Record, Vol. 2 at 44. Wilart therefore asserted that if it was liable to Kapiolani, Reinhart was also liable.

Regarding this issue, the lower court made FOF 29 and 30 which provide:

29. Reinhart was not, in fact, a developer for the project.

30. The purported Redevelopment Agreement between Reinhart and Kapiolani (Exhibit D9) was not executed for the purpose of establishing an owner-developer relationship.

Record, Vol. 8 at 118. Based on FOF 29 and 30, the lower court stated in COL 11 that "Reinhart is not liable for any of the claims and causes of action alleged in the Fourth-Party Complaint[.]" *Id.* at 121.

Wilart claims that FOF 29 and 30 are "inadequate." We agree.

The applicable test of adequacy "of a trial judge's findings is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision." 9 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 2579 at 715 (1971). *See also Ventura v. Grace*, 3 Haw. App. 371, 376, 650 P.2d 620, 623 (1982).

Here, FOF 29 and 30 are conclusory and ultimate findings which are not supported by subsidiary findings. In light of the existence of the February 5, 1982 redevelopment agreement indicating an owner-developer relationship between Kapiolani and Reinhart, these conclusory findings are inadequate.

Accordingly, the case must be remanded for additional findings on this issue based on the existing record.

### IV.

Finally, Wilart contends that the lower court erred in (1) admitting into evidence portions of Reinhart's deposition and the entire

deposition of Georges Pochet, (2) admitting into evidence the entire depositions of Wiener and Morris taken in another action, and (3) refusing to admit into evidence portions of Wiener's deposition.

The admissibility of depositions at trial is reviewable under the abuse of discretion standard. *See In re Deeren,* 158 Mich. App. 539, 405 N.W.2d 189 (1987). A trial court's exercise of discretion in ruling on the admissibility of depositions "will be upheld unless an abuse of discretion is manifest." *Moody v. Pulte Homes, Inc.,* 125 Mich. App. 739, ___, 337 N.W.2d 283, 288 (1983) (citation omitted). We find no manifest abuse of discretion by the lower court on this issue.

## V.

For the reasons set forth in Parts II and III, *supra,* we vacate the judgment and supplemental judgment and remand the case for further proceedings consistent with this opinion.

*John Francis Perkin (Mark R. Thomason* with him on the opening brief and *Wayne S. Sakamoto* with him on the reply brief; Law Offices of *John Francis Perkin,* of counsel) for plaintiff-appellant, third-party defendants-appellants, and fourth-party plaintiffs-appellants.

*Jay M. Fidell (Denis Lee* with him on the brief; *Bendet, Fidell & Sakai,* Attorneys at Law, A Law Corporation, of counsel) for defendant/counterclaimant/third-party plaintiff-appellee and fourth-party defendant-appellee.