*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND THE PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCAP-16-0000496
09-FEB-2018
10:22 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

RICHARD NELSON III, KALIKO CHUN, JAMES AKIONA, SR.,
SHERILYN ADAMS, KELII IOANE, JR., and CHARLES AIPIA,
Plaintiffs-Appellees-Cross-Appellants,

vs.

HAWAIIAN HOMES COMMISSION, THE DEPARTMENT OF HAWAIIAN HOME
LANDS, JOBIE MASAGATANI, in her official capacity as Chair of
the Hawaiian Homes Commission, WILLIAM K. RICHARDSON,[1] MICHAEL P.
KAHIKINA, DOREEN NAPUA GOMES, GENE ROSS DAVIS, WALLACE A.
ISHIBASHI, DAVID B. KAAPU, and WREN WESCOATT, in their official
capacities as members of the Hawaiian Homes Commission,
Defendants-Appellees-Cross-Appellees,

and

WESLEY MACHIDA, in his official capacity as the State Director
of Finance, and the STATE OF HAWAI'I,
Defendants-Appellants-Cross-Appellees.

_____

SCAP-16-0000496

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CAAP-16-0000496; CIV. NO. 07-1-1663)

FEBRUARY 9, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND POLLACK, JJ.,
WITH WILSON, J., DISSENTING

_____

[1]     Pursuant to Hawai'i Rules of Evidence Rule 201 (1980), this court takes
judicial notice that William K. Richardson passed away on November 10, 2017.

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This case is on appeal before this court for the second time. In the first appeal, we determined that the political question doctrine[2] did not bar a judicial interpretation of the meaning of "sufficient sums" for the Department of Hawaiian Home Lands' ("DHHL") administrative and operating expenses, pursuant to Article XII, Section 1 of the Hawai'i Constitution. Limited judicially discoverable and manageable standards existed to interpret the term "sufficient sums," based on the 1978 Constitutional Convention delegates' estimate that DHHL's administrative and operating costs were $1.3 to 1.6 million at that time, and, going forward, that figure could be adjusted for inflation. Nelson v. Hawaiian Homes Comm'n, 127 Hawai'i 185, 277 P.3d 279 (2012) ("Nelson I").

On remand to the Circuit Court of the First Circuit ("circuit court"),[3] the circuit court held a bench trial and found, however, that DHHL's actual need for its administrative and operating expenses was over $28 million. It then concluded that the legislature was constitutionally obligated to make such an appropriation to DHHL for fiscal year 2015-16. The circuit

---

[2] Under the political question doctrine, "certain matters are political in nature and thus inappropriate for judicial review." Nishitani v. Baker, 82 Hawai'i 281, 290, 921 P.2d 1182, 1191 (App. 1996) (citation omitted).

[3] The Honorable Jeannette H. Castagnetti presided.

court also enjoined the defendants (the State of Hawai'i and its Director of Finance, collectively the "State Defendants") from violating the constitution or breaching their fiduciary duties to the Hawaiian Homelands trust beneficiaries.

The State Defendants filed a motion for reconsideration, which the circuit court granted in part and denied in part. The circuit court granted the motion in part to modify those portions of the order that (1) called for the over $28 million appropriation and (2) enjoined the defendants from violating the constitution or breaching their fiduciary duties to Hawaiian Homelands trust beneficiaries. In its amended order, the circuit court simply declared that (1) the State of Hawai'i did not provide sufficient sums to DHHL, and (2) that the defendants must fulfill their constitutional and trust responsibilities.

This court accepted transfer of this appeal from the Intermediate Court of Appeals ("ICA"). On appeal, the State Defendants argue that (1) the circuit court erred in declining to use the 1978 baseline of $1.3 to 1.6 million, adjusted for inflation, to calculate "sufficient sums" for DHHL's administrative and operating expenses; and (2) the circuit court erred in ordering the State Defendants to fulfill their constitutional obligations under Article XII, Section 1. The Hawai'i State Legislature, as amicus curiae, filed a brief in support of the State Defendants.

3

We hold that the circuit court erred by engaging in a comprehensive inquiry into the amount DHHL actually needed for its administrative and operating expenses. Under Nelson I, the only judicially discoverable and manageable standard for determining "sufficient sums" for DHHL's administrative and operating budget was established by the delegates of the 1978 Constitutional Convention as $1.3 to 1.6 million, adjusted for inflation. 127 Hawai'i at 202-03, 277 P.3d at 296-97. We observed that "consideration of [how many lots, loans, and rehabilitation projects (and their scope)] could provide the basis for increasing the required administrative funding above the 1978 baseline identified by the delegates"; however, we cautioned that such consideration "could also involve the courts in addressing issues . . . that involve political questions." 127 Hawai'i at 203, 277 P.3d at 297.

In this case, the circuit court exceeded our mandate in Nelson I when it determined the amount DHHL actually needed for its administrative and operating expenses. Accordingly, we vacate the circuit court's First Amended Final Judgment, Final Judgment, and underlying orders, and remand this case to the circuit court to determine the current value of $1.3 to 1.6 million (in 1978 dollars), adjusted for inflation.

4

## II.  Background

### A.  Nelson I

In Nelson I, six individual plaintiffs (Richard Nelson III; Kaliko Chun; James Akiona, Sr.; Sherilyn Adams; Kelii Ioane, Jr.; and Charles Aipia; collectively, "the Plaintiffs") filed a first amended complaint alleging that the State Defendants and DHHL had violated Article XII, Section 1 of the Hawai'i State Constitution.  That constitutional provision states the following:

> The legislature shall make sufficient sums available for the following purposes: (1) development of home, agriculture, farm and ranch lots; (2) home, agriculture, aquaculture, farm and ranch loans; (3) rehabilitation projects to include, but not limited to, educational, economic, political, social and cultural processes by which the general welfare and conditions of native Hawaiians are thereby improved; (4) the administration and operating budget of the department of Hawaiian home lands; in furtherance of (1), (2), (3) and (4) herein, by appropriating the same in the manner provided by law.

Hawai'i State Constitution, Article XII, Section 1.  In Count 1, the Plaintiffs alleged that the State had failed to make sufficient sums available to DHHL for the four purposes enumerated above.  In Count 2, the Plaintiffs alleged that DHHL breached its trust duties to its beneficiaries by failing to request sufficient sums from the State.  In Count 3, the Plaintiffs alleged that the DHHL Defendants breached their trust obligation to beneficiaries by leasing DHHL lands for commercial purposes to raise funds.  Lastly, in Count 4, the Plaintiffs alleged that the DHHL Defendants breached their obligation to

trust beneficiaries by failing to ascertain whether trust lands were necessary for general homestead purposes before offering them for commercial lease. The parties stipulated to dismiss Counts 3 and 4 without and with prejudice, respectively.

The circuit court granted the State Defendants' motion for summary judgment (in which the DHHL Defendants joined), concluding that Counts 1 and 2 raised non-justiciable political questions. The circuit court concluded that there were "no judicially discoverable and manageable standards for resolving the dispute over the definition and determination of 'sufficient sums'" under the Hawai'i Constitution "without making initial policy determinations of a kind clearly for nonjudicial discretion." In other words, the circuit court declined to rule on the Plaintiffs' claims, leaving their resolution to the political process. See Nelson I, 127 Hawai'i at 194, 277 P.3d at 288.

On initial appeal to the ICA, an ICA majority concluded Plaintiffs' claims were not barred by the political question doctrine. Nelson v. Hawaiian Homes Comm'n, 124 Hawai'i 437, 246 P.3d 369 (App. 2011). Chief Judge Nakamura concurred with the majority's holding that the political doctrine question did not preclude the justiciability of the dispute over whether the legislature provided DHHL with "sufficient sums." 124 Hawai'i at 447, 246 P.3d at 379 (Nakamura, C.J., concurring). In his

6

opinion, the "pre-1978 levels and the framers' intent, including their concern with the DHHL's leasing of lands to the general public" provided the court with "judicially discoverable and manageable standards for evaluating whether the Legislature has satisfied the 'sufficient sums' requirement of Article XII, Section 1 without resort to nonjudicial policy determinations." 124 Hawai'i at 452, 246 P.3d at 384 (Nakamura, C.J., concurring).

On certiorari, this court first traced the development of our political question jurisprudence. We observed that the "political question doctrine is often considered the most amorphous aspect of justiciability.'" Nelson I, 127 Hawai'i at 194, 277 P.3d at 288 (quoting Nishitani, 82 Hawai'i at 299, 921 P.2d at 1191) (brackets omitted). We stated, "The doctrine is the result of the balance courts must strike in preserving separation of powers yet providing a check upon the other two branches of government." Nelson I, 127 Hawai'i at 194, 277 P.3d at 288 (citing Trustees of the Office of Hawaiian Affairs v. Yamasaki, 69 Haw. 154, 737 P.2d 446 (1987)). In Yamasaki, this court adopted the test set forth by the United States Supreme Court in Baker v. Carr, 369 U.S. 186 (1962), which states

> Prominent on the surface of any case held to involve a political question is found: (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; or (2) a lack of judicially discoverable and manageable standards for resolving it; or (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or (4) the impossibility of a court's undertaking

7

> independent resolution without expressing lack of respect
> due coordinate branches of government; or (5) an unusual
> need for unquestioning adherence to a political decision
> already made; or (6) the potentiality of embarrassment from
> multifarious pronouncements by various departments on one
> question.

Nelson I, 127 Hawai'i at 194, 277 P.3d at 288 (citing Yamasaki, 69 Haw. at 170, 737 P.2d at 455 (quoting Baker, 369 U.S. at 217)) (brackets omitted).  In Nelson I, the issue was whether the determination of "sufficient sums" under Article XII, Section 1 presented a nonjusticiable political question due to "a lack of judicially discoverable and manageable standards" for resolving the issue and/or "the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion."  Nelson I, 127 Hawai'i at 193-94, 277 P.3d at 287-88.

We ultimately "affirm[ed] the ICA's judgment, but only on the narrower ground that the determination of what constitutes 'sufficient sums' for administrative and operating expenses under the Hawai'i Constitution's Article XII, Section 1 is justiciable and not barred as a political question."  127 Hawai'i at 206, 277 P.3d at 300.  We held judicially discoverable and manageable standards existed to determine "sufficient sums" for DHHL's administrative and operating expenses, based on the 1978 Constitutional Convention delegates' estimate that those costs were $1.3 to 1.6 million at that time.  Nelson I, 127 Hawai'i 185, 277 P.3d 279.  This court did not judicially determine what

8

"sufficient sums" would be, and we imposed no funding requirements upon the legislature.  We held only that the political question doctrine did not bar justiciability of the case.

In arriving at this holding, we turned to the 1978 Constitutional Convention history.  We quoted the spirited discussion among the delegates who were trying to "pin down a numerical figure" for DHHL's funding generally.  127 Hawai'i at 202, 277 P.3d at 296.  We reproduced Delegates Burgess, De Soto, and Sutton's dialogue, through which they "ultimately arrived at $1.3 to 1.6 million as a 'sufficient sum' . . . [as] to administrative and operating expenses" specifically, as follows:

> Delegate Burgess: [W]hat would be the estimated cost of these programs which are mandated?
>
> ....
>
> Delegate De Soto: What we propose with respect to "shall fund" is the administrative and costs of running the Hawaiian homes program, which would amount to operating and administrating approximately $1.3 to $1.6 million, taking into consideration inflation, collective bargaining agreements that go into inflation with the pay.
>
> ....
>
> Delegate Burgess: I would ask — is the $1.3 to $1.6 million that was mentioned the total cost of the programs which are mandated to the legislature? Does that amount include the development of home, agriculture, farm and ranch lots, and the other aims that are cited on page 2 of the proposal?
>
> ....
>
> Delegate Burgess: Does the $1.3 to $1.6 million figure that was mentioned just a few minutes ago include the costs of the home developments, the loans and the other rehabilitation projects which are referred to on page 2? — in other words, the development of home, agriculture, farm and ranch lots; the home, agriculture, aquaculture, ranch

and farms loans; and all of those programs. Are all of those included in the total estimate of the $1.3 million to fund this program, or is the total cost to the State different from that?

....

Delegate Sutton: The $1.3 to $1.6 million is for administrative costs at present. Their need is more. The way the State itself can fund all the rest of the projects — and directly answering your question, delegate, is no, is not only $1.3 to $1.6 million — the way the State can find the funds is through mutual agreement with different parts of the government here in Hawaii; and that is, for the poor people who qualify, that is for HHA or Hawaiian Homes Commission Act properties, that there are similar needs and requirements for those to get the land — that is, under $10,000 net assets. The State may fund these projects and come out with considerably more for the people at less of an expense, simply because the Hawaiian homes commission has land and does not need to condemn and purchase other land to fit the needy at that level.

Id. (citation omitted). Synthesizing these discussions, we concluded

> Thus, by the end of the Committee on the Whole Debates, what was certain was that the $1.3 to $1.6 [million] figure represented "sufficient sums" for administrative and operating expenses only. As to that purpose under Article XII, then, the 1978 Constitutional Convention history does provide judicially discoverable and manageable standards that do not involve initial policy determinations of a kind clearly for nonjudicial discretion. At a minimum, funding at or above the $1.3 to $1.6 million envisioned in 1978 would be required.[8] Therefore, the determination of what constitutes "sufficient sums" for administrative and operating expenses is not barred by the political question doctrine.
>
> [8] Presumably, this figure could be adjusted to reflect the impact of factors such as inflation or increased collective bargaining costs, both of which were acknowledged by Delegate De Soto as factors that could appropriately be taken into account in determining the required contribution.

127 Hawai'i at 202-03, 277 P.3d at 296-97 (citation omitted).

This court thus ruled that judicially discoverable and manageable standards existed with respect to "sufficient sums"

10

for administrative and operating expenses, i.e., $1.3 to 1.6 million in 1978 dollars, adjusted for inflation.  127 Hawai'i at 202-03, 203 n.8, 277 P.3d at 296-97, 297 n.8.  We also stated that Delegate Sutton's statement ("Their need is more") referred only to DHHL's need for more money for another enumerated purpose under Article XII, Section 1.  127 Hawai'i at 203, 277 P.3d at 297 (interpreting "Their need is more" to refer to more money for the development of home, agriculture, farm, and ranch lots, not for administrative and operating expenses.)

We held, "Article XII, Section 1 and its constitutional history, however, do not shed light on what would constitute 'sufficient sums' for the other three enumerated purposes," lot development, loans, and rehabilitation projects.  127 Hawai'i at 206, 277 P.3d at 300.  Thus, "the political question doctrine bars judicial determination of what would constitute 'sufficient sums' for those purposes, and the ICA erred in concluding otherwise."  Id.  We noted that consideration of the other three purposes "could provide the basis for increasing the required administrative funding beyond the 1978 baseline identified by the delegates, but could also involve the courts in addressing issues (the development of lots, loans, and rehabilitation projects) that involve political questions."  Id.  We rejected, however, the State's argument that "challenges associated with determining the upper limit of the required administrative

11

funding render the calculation of the minimum required contribution nonjusticiable." Id. We stated, "It is clear that the constitutional delegates intended to require appropriation of 'sufficient sums' to relieve DHHL of the burden of general leasing its lands to generate administrative and operating funds, and to that end, they identified the minimum funding necessary for such expenses." Id. (footnote omitted).

Prior to the entry of this court's judgment, the Plaintiffs requested an award of attorneys' fees and costs under the private attorney general doctrine. Nelson v. Hawaiian Homes Comm'n, 130 Hawai'i 162, 307 P.3d 142 (2013). In analyzing and ultimately denying the request, this court nonetheless recognized that the Plantiffs' litigation produced the following result: "DHHL will be able to shift the funds it was spending on administrative and operating expenses towards fulfilling its trust duties to its beneficiaries." 130 Hawai'i at 167, 307 P.3d at 147. Once this court resolved the fees and costs request and issued its judgment, the case returned to the circuit court for further proceedings.

**B. Remand Proceedings before the Circuit Court**

**1. The Parties' Motions for Summary Judgment ("MSJ")**

**a. Plaintiffs' MSJ**

On remand to the circuit court, the Plaintiffs filed a MSJ, arguing that there were no genuine issues of material fact, and

12

that the Plaintiffs were entitled to an order declaring that the State had failed to sufficiently fund DHHL, and that DHHL had breached its trust duty to vigorously seek sufficient funding. The Plaintiffs argued that DHHL requested from the State, and the State appropriated to DHHL, sums for administrative and operating expenses that were far less than DHHL's actual need. In opposition to the Plaintiff's MSJ, the State Defendants argued that "sufficient sums" should be calculated based on the $1.3 million figure[4], drawn from the 1978 constitutional history of Article XII, Section 1, adjusted for inflation.

### b. DHHL's MSJ

The DHHL Defendants also filed a MSJ, asking for Count II of the first amended complaint to be dismissed, on the basis that no genuine issue of material fact existed as to whether DHHL had requested sufficient funds for its administrative and operating expenses from the legislature for the 2013-2015 fiscal biennium. The DHHL Defendants stated that they requested $25 million per year for the 2013-2015 fiscal biennium for administrative and operating expenses, and were appropriated around $9 million per year by the legislature. Therefore, they argued, they demonstrated that they fulfilled their trust duty

---

[4]    Before the circuit court, the State Defendants asserted that the $1.3 million figure, adjusted for inflation, represented "sufficient sums." Before this court, however, the State Defendants assert that the $1.3 to 1.6 million figure, adjusted for inflation, represents "sufficient sums."

to seek sufficient sums for administrative and operating expenses from the State.  The State Defendants again counter-argued that "sufficient sums" for DHHL was $1.3 million[5], adjusted for inflation.

### c.   The State Defendants' MSJ

The State Defendants also filed a MSJ.  They argued that Article XII, Section 1 requires the legislature to make "sufficient sums" available for DHHL's administrative and operating budget "in the manner provided by law."  According to the State Defendants, the "manner provided by law" was through the legislature's appropriation process, described in Article VII, Sections 5, 7, 8, and 9 of the Hawai'i Constitution, and Section 213(f) of the Hawaiian Homes Commission Act, which governs the Hawaiian home administration account.

### d.   The Circuit Court's Orders Denying All Parties' MSJs

The circuit court denied all of the parties' MSJs.  In its order denying the Plaintiffs' and DHHL's MSJs, the circuit court explained that it required a "fuller development of the facts" in order to determine whether the State violated its constitutional duty to make sufficient sums available to DHHL for its administrative and operating budget, and whether DHHL

---

[5]   Again, before the circuit court, the State Defendants asserted that the $1.3 million figure, adjusted for inflation, represented "sufficient sums." Before this court, however, the State Defendants assert that the $1.3 to 1.6 million figure, adjusted for inflation, represents "sufficient sums."

breached its fiduciary duty to its beneficiaries by failing to request sufficient sums from the legislature.  The circuit court then issued an order summarily denying the State Defendants' MSJ.

### 2.  Bench Trial

The case then proceeded to an eight-day bench trial.  DHHL relied principally upon Hawaiian Homes Commission Chair Jobie Masagatani and DHHL administrative services officer Rodney Lau to establish the $28 million figure as "sufficient sums" for DHHL's administrative and operating budget for the 2015-2016 fiscal year.  These witnesses testified that DHHL arrived at the $28 million figure by starting with a base budget of moneys already appropriated for DHHL's administrative and operating budget in prior years.  From there, DHHL determined how many more administrative positions it needed to deliver quality services to its beneficiaries and meet its mission.  To that subtotal, DHHL added a 5% inflation factor, estimating that it needed $28.1 – 28.2 for its administrative and operating expenses.

The State Defendants relied upon Department of Budget and Finance administrator Neil Miyahira to testify that "sufficient sums" needed to be determined through the typical legislative appropriation process.  Miyahira testified that he was familiar with the $1.3 to 1.6 million figure established at the 1978

15

Constitutional Convention as "sufficient sums."  Nevertheless, he testified that the Department of Budget and Finance evaluates DHHL's budget requests in the normal course, as it does with any other State department, without regard to the mandate contained in Article XII, Section 1.  He also testified that he considered "administrative and operating expenses" to include only "salaries and operating expenses for [DHHL's] offices."

### 3.    The Circuit Court's Findings of Fact, Conclusions of Law, and Order

After trial, the circuit court issued its Findings of Fact, Conclusions of Law, and Order ("FOFs, COLs, and Order").  Key to this appeal, the circuit court's Finding of Fact ("FOF") 44 states, "DHHL needs more than $28 million annually for its administrative and operating budget for fiscal year 2015-16, not including repairs."  The circuit court then declared and ordered the following:

> 1.  The State of Hawai'i has failed to provide sufficient funds to the Department of Hawaiian Home Lands for its administrative and operating budget in violation of the State's constitutional duty to do so under article XII, section 1 of the Hawai'i Constitution.
>
> 2.  The State of Hawai'i must fulfill its constitutional duty by appropriating sufficient general funds to the Department of Hawaiian Home Lands for its administrative and operating budget so that the Department does not need to use or rely on revenue directly or indirectly from general leases to pay for these expenses.
>
> 3.  Although what is "sufficient" will change over the years, the sufficient sums that the legislature is constitutionally obligated to appropriate in general funds for DHHL's administrative and operating budget (not including significant repairs) is more than $28 million for fiscal year 2015-2016.

16

4. Prior to 2012, the DHHL Defendants breached their trust duties by failing to take all reasonable efforts – including filing suit – to obtain all the funding it needs for its administrative and operating budget.

5. The defendants shall prospectively fulfill their constitutional duties and trust responsibilities. They are enjoined from violating these obligations.

6. Judgment on Counts 1 and 2 shall be entered in favor of Plaintiffs and against the State Defendants (as to Count 1) and the DHHL Defendants (as to Count 2).

The circuit court then entered Final Judgment.

### 4. The State Defendants' Motion for Reconsideration

Ten days later, the State Defendants filed a motion for reconsideration. The State Defendants argued that insufficient evidence supported the $28 million figure. Consequently, they asked the circuit court to eliminate paragraph 3 in its order. The State Defendants also argued that paragraph 5 violated the constitutional principle of separation of powers. Specifically, the State Defendants asserted, "[F]or reasons provided in the State Defendants' motion for summary judgment, filed 4/17/15, 'sufficiency' within the meaning of art. XII, Section 1, is to be determined by the legislature, through its usual budgeting process, not by the courts." (Emphasis in original.) The State Defendants argued that the separation of powers doctrine prohibited the court from compelling the legislature to appropriate any particular amount of money. Consequently, they asked the circuit court to eliminate paragraph 5 in its order.

The legislature, as amicus curiae, was granted leave to file a memorandum in support of the State Defendants' motion for reconsideration. The legislature argued that the circuit court's ruling usurped the legislature's power to appropriate public funds. The legislature asked the circuit court to amend its judgment and order to make it clear that the circuit court was not ordering an appropriation.

The court held a hearing on the motion for reconsideration, then reconvened the parties for its oral ruling three days later. The circuit court first orally ruled that substantial evidence supported its finding that over $28 million constituted sufficient sums for DHHL's administrative and operating expenses for fiscal year 2015-2016. The circuit court next addressed the State Defendants' argument that the circuit court violated the separation of powers doctrine by ordering the legislature to appropriate funds, and that the circuit court's authority was limited to providing declaratory relief only. The circuit court orally ruled as follows:

> [W]hen the courts determine that the State has not met its constitutional duty to act and has not complied with the Constitution because the amount appropriated, as determined through the budgetary process, is insufficient and does not pass constitutional muster, the remedy can and should be compliance with the requirement to make sufficient sums available for DHHL's administrative and operating budget. Otherwise, there is no effective remedy for the State's violation of its constitutional duty to fund.

The circuit court then concluded that "declaratory relief alone is not a sufficient remedy to the years of underfunding of the

18

Department of Hawaiian Homelands that it has suffered and that a form of injunctive relief is appropriate and necessary for the State to comply with its constitutional mandate under Article XII, section 1."

The circuit court's written order granted in part and denied in part the State Defendants' motion for reconsideration. The circuit court denied the motion in part, declining to reconsider its finding that over $28 million constituted "sufficient sums" for DHHL's administrative and operating expenses for fiscal year 2015-2016.  The circuit court granted the motion in part, modifying paragraphs 3 and 5 so that the order would not be "construed in any form as an order for the Legislature to appropriate funds."  Paragraph 3 was modified to eliminate language obligating the legislature to appropriate a sum certain to DHHL for its administrative and operating expenses, concluding instead that the legislature's current appropriation was insufficient:

> Although what is sufficient will change over the years, the amount of general funds appropriated to DHHL for its administrative and operating budget for fiscal year 2015-2016 ($9,632,000) is not sufficient.  The State of Hawai'i is required to comply with the Hawai'i Constitution and must fund DHHL's administrative and operating expenses by making sufficient general funds available to DHHL for its administrative and operating budget for fiscal year 2015-2016.

Paragraph 5 was modified to eliminate language enjoining the defendants from violating their constitutional duties or breaching their trust responsibilities; as amended, paragraph 5

19

reads, "The Defendants must fulfill their constitutional and trust responsibilities."

The circuit court then entered an "Order Amending Order Issued November 27, 2015" reflecting the changes to paragraphs 3 and 5 in its order.

The Plaintiffs filed a motion for reconsideration of that order. They asked the circuit court to again modify its order to explicitly state, "Sufficient sums for DHHL's administrative and operating budget (not including significant repairs) is more than $28 million for fiscal year 2015-16." The circuit court summarily denied the motion.

The circuit court then entered a First Amended Final Judgment. The State Defendants appealed.[6] This court accepted transfer of this case from the ICA.

## C. Points of Error on Appeal

On appeal, the State Defendants raise the following points of error:

> 1. The circuit court erred, as a matter of law, when, notwithstanding firmly established principles of constitutional construction, it construed the provisions of the amendment the delegates to the 1978 Constitutional Convention made to article XII, section 1 of the Hawai'i Constitution and concluded that
>
> > a. The term "administration and operating budget" includes and is the budget for all of DHHL's administrative and operating expenses, including

_____

[6] The Plaintiffs also cross-appealed. For reasons described in greater detail in n.8, we find the Plaintiffs' points of error on appeal unpersuasive.

"*actual* administrative and operating expenses,"
"programmatic costs," and "operating costs" as that
term is defined in section 37-62, Hawaii Revised
Statutes (HRS).
. . . .
b.  Despite the availability of federal funds, and
express authority in the HHCA to pay particular
operating expenses with funds other than receipts
from DHHL's general leasing and other dispositions of
"available land," all of DHHL's administration and
operating budget must be funded by general funds.
. . . .
c.  DHHL Defendants have the first and last word as
to which expenses and how much funding is needed for
its annual administrative and operating expenses, and
neither the director of finance, governor, nor the
legislature may reduce or eliminate an expense DHHL
includes in its administration and operating budget.[7]
. . . .
2.  The circuit court erred in finding and concluding and
declaring that the State of Hawai'i failed to provide
sufficient funds to DHHL for its administrative and
operating budget, and rejecting State Defendants' position
that article XII, section 1 of the Hawai'i Constitution only
requires funding for DHHL's administration and operating
budget of $1.3-$1.6 million (the 1978 Baseline).
. . . .
3.  The circuit court erred in concluding that injunctive
relief in favor of Plaintiffs and against State Defendants,
particularly the legislature, is appropriate, and enjoining
State Defendants, particularly the legislature, from
violating their constitutional duties and trust
responsibilities. . . .

In short, the State Defendants challenge (1) whether the circuit

court erred in declining to use the 1978 baseline of $1.3 to 1.6

million, adjusted for inflation, to calculate "sufficient sums";

and (2) whether the circuit court erred in ordering the State

---

[7]    The State Defendants provide no argument on the first point of error
and its three subparts.  These points are deemed waived.  See Hawai'i Rules of
Appellate Procedure ("HRAP") Rule 28(b)(7) (2015) (requiring the appellant's
opening brief to include "[t]he argument, containing the contentions of the
appellant on the points presented and the reasons therefor, with citations to
the authorities, statutes and parts of the record relied on," and stating,
"Points not argued may be deemed waived.") Furthermore, as to point of error
1.c, the circuit court did not actually conclude that DHHL has "the first and
last word as to which expenses and how much funding is needed for its annual
administrative and operating expenses. . . ."  There is no such conclusion of
law so stating.

Defendants to fulfill their constitutional obligations under Article XII, Section 1.[8]

### III.  Standard of Review

The appellate court reviews "questions of constitutional law <u>de novo</u>, under the right/wrong standard."  <u>Jou v. Dai-Tokyo Royal State Ins. Co.</u>, 116 Hawai'i 159, 164-65, 172 P.3d 471, 476-77 (2007) (citation omitted).

---

[8]  On cross-appeal, the Plaintiffs raise the following points of error: (1) "[t]he State Defendants' motion for reconsideration was based on arguments that could have been, or were argued earlier"; and (2) "[t]he State Defendants waived their objections to the injunctive relief requested by [Plaintiffs]."  We find these points of error unpersuasive.  First, the Plaintiffs argue that the State Defendants raised their separation of powers argument initially in their MSJ and, therefore, could not raise that argument again in their motion for reconsideration.  <u>See</u>, e.g., <u>Sousaris v. Miller</u>, 92 Hawai'i 505, 513, 993 P.2d 539, 547 (2000) ("Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during an earlier proceeding.") (footnote omitted).  The State Defendants did raise the separation of powers argument in their MSJ, but that was for the purpose of preventing a judicial determination of "sufficient sums" altogether.  When the State Defendants raised the separation of powers argument again in their motion for reconsideration, it was in direct response to the circuit court's order affirmatively obligating the State to fund over $28 million in administrative and operating expenses to DHHL.  The State Defendants assert, and we agree, that the separation of powers argument raised in response to the circuit court's order served a different purpose than the separation of powers argument raised in the State Defendants' MSJ.  Therefore, the State Defendants could not have raised (and did not raise) the argument earlier.  The circuit court, therefore, did not err in granting, in part, the State Defendants' motion for reconsideration.  Further, in granting, in part, the State Defendants' motion for reconsideration, the circuit court also properly modified its order so that it would not be "construed in any form as an order for the Legislature to appropriate funds."

Second, the Plaintiffs argue that the State Defendants waived any objection to the circuit court's imposition of injunctive relief.  As this opinion later notes, however, the circuit court erred in directing a $28 million appropriation in its initial order; its amended order properly directed the State Defendants simply to fulfill their constitutional responsibilities.  Thus, there is no need to address this point of error.

22

## IV.  Discussion

The State Defendants argue the circuit court erred in the manner in which it determined "sufficient sums."  On remand for the determination of what constituted "sufficient sums" under Article XII, Section 1, the circuit court held a trial to establish the amount DHHL actually needed for its administrative and operating expenses for fiscal year 2015-2016.  The State Defendants insisted, on the other hand, that Nelson I required only that "sufficient sums" be determined with reference to the $1.3 to 1.6 million figure established at the 1978 Constitutional Convention, adjusted for inflation.

The State Defendants are correct.  Our Nelson I opinion clearly concluded that the only "judicially discoverable and manageable standard" for determining "sufficient sums" for DHHL's administrative and operating expenses was the $1.3 to 1.6 million figure established by the Constitutional Convention delegates, adjusted for inflation:

> Thus, by the end of the Committee on the Whole Debates, what was certain was that the $1.3 to $1.6 million figure represented "sufficient sums" for administrative and operating expenses only.  As to that purpose under Article XII, then, the 1978 Constitutional Convention history does provide judicially discoverable and manageable standards that do not involve initial policy determinations of a kind clearly for nonjudicial discretion.  At a minimum, funding at or above the $1.3 to $1.6 million envisioned in 1978 would be required. Therefore, the determination of what constitutes "sufficient sums" for administrative and operating expenses is not barred by the political question doctrine.

Nelson I, 127 Hawai'i at 202-03, 277 P.3d at 296-97 (footnote omitted, emphasis added).[9]

There is no suggestion in Nelson I that what constitutes "sufficient sums" would be recalculated periodically by the circuit court as "actual sums,"[10] because to do so would involve the judiciary in "initial policy determinations of a kind clearly for nonjudicial discretion."  That is what occurred in this case.  Instead, this court determined in Nelson I that the amount sufficient in 1978 for administrative and operating expenses ($1.3 to 1.6 million) could be adjusted for inflation.  In other words, in 1978, the delegates established "sufficient sums" that would not be recalculated in the future, but adjusted in a manner that could be mathematically determined, not judicially determined.  Further, were "actual sums" the

_____

[9]     The delegates arrived at this numerical determination after extensive discussion of the 1976 DHHL General Plan, the increasing number of homestead applicants, the need for a bigger DHHL staff, and the need for automated record-keeping systems.  Nelson I, 127 Hawai'i at 200, 202-03, 277 P.3d at 294, 296-97.  Therefore, we respectfully disagree with the Dissent, which posits that Nelson I leaves open present judicial reconsideration of these factors.  Dissent Sections II.A.3 and II.B.

[10]    Therefore, we respectfully disagree with the Dissent that the circuit court was free to "affirmatively" determine, as "sufficient sums," DHHL's "actual" administrative and operational costs.  Dissent Section II.C.  Respectfully, the Dissent misreads Nelson I, which concluded only that "a judicial determination of what affirmatively constitutes 'sufficient sums' for the other three constitutional purposes [in Article XII, Section 1] is nonjusticiable, based on the political question doctrine."  Nelson I, 127 Hawai'i at 206, 277 P.3d at 300.  The Dissent misinterprets this sentence to mean that this court expressly held that the circuit court could "affirmatively" determine "sufficient sums" as "actual" sums for DHHL's administrative and operating expenses.  Nelson I did not so hold.

24

standard, there would be no need for Delegate De Soto to state that the $1.3 to 1.6 million figure could be adjusted for inflation, as periodically recalculating actual, present sums requires no adjustment for inflation.

The State Defendants also argue that the $1.3 to 1.6 million figure did not need to be adjusted for increased collective bargaining costs in addition to inflation, but increased collective bargaining costs were included in inflation.  To support this argument, they point to Delegate De Soto's comment at the 1978 Constitutional Convention, which was, "What we propose with respect to 'shall fund' is the administrative and costs of running the Hawaiian homes program, which would amount to operating and administrating approximately $1.3 to 1.6 million, taking into consideration inflation, collective bargaining agreements that go into inflation with the pay."  Debates in the Committee of the Whole on Hawaiian Affairs Comm. Prop. No. 11, in 2 Proceedings of the Constitutional Convention at 421-22.  To the State, Delegate De Soto acknowledged that increased pay due to collective bargaining agreements is one major contributor to inflation; it is not separate from inflation, but a key contributor to inflation.  This interpretation appears to be faithful to Delegate De Soto's floor speech.  In short, the State Defendants conclude that the State is constitutionally mandated to provide to DHHL, for

administrative expenses, a level of funding at or above $1.3 to 1.6 million, adjusted for inflation. This amount, they argue, is consistent with the framers' intent.

The DHHL Defendants disagree with the State Defendants. They argue that this court in Nelson I "instructed the Circuit Court to determine on remand 'sufficient sums' for DHHL's administration and operating budget without limitation or restriction." There is no such remand instruction in the Nelson I opinion, which simply affirmed the ICA's judgment. 127 Hawai'i at 206, 277 P.3d at 300. The DHHL Defendants point out that Nelson I quoted the following 1978 Constitutional Convention history, which indicates that the $1.3 to 1.6 million figure identified by the delegates was not the upper limit and was insufficient even in 1978:

> Delegate Sutton: The $1.3 to $1.6 million is for [DHHL's] administrative costs at present. Their need is more.
> 127 Hawai'i at 202, 277 P.3d at 296 (emphasis added).
> . . . .
> "As demands on the department and staff grow, a much bigger staff will be required . . . Not only is there a demand on the money for staff, but there is also other administrative demands that need to be met through funds, especially in the area of record-keeping."
> 127 Hawai'i at 200, 277 P.3d at 294 (quoting 1 Proceedings at 414).

However, as we made clear in Nelson I, the phrase "Their need is more" did not refer to more money than $1.3 to 1.6 million for administrative and operating expenses; it referred to more money for the "development of home, agriculture, farm and ranch lots."

26

127 Hawaiʻi at 203, 277 P.3d at 297.  We held that judicially calculating "sufficient sums" for that purpose was barred by the political question doctrine.  127 Hawaiʻi at 205, 277 P.3d at 299.

For their part, in support of their understanding that "sufficient sums" means "actual sums," the Plaintiffs point to Nelson I's quotation of the definition of "sufficient" from Webster's Third New International Dictionary as "marked by quantity, scope, power, or quality to meet with the demands, wants or needs of a situation or of a proposed use or end. . . ."  Nelson I, 127 Hawaiʻi at 198, 277 P.3d at 292.  This court, however, found these dictionary definitions too unclear to apply.[11]  Id.  ("Even with these popular definitions in mind, it is unclear what precisely the constitutional delegates intended when they used the term 'sufficient sums.'")  As a result, this court turned to the 1978 Constitutional Convention history to interpret the phrase "sufficient sums."  Id.  The $1.3 to 1.6 million baseline (adjusted for inflation) set by the 1978 Constitutional Convention delegates was the only justiciable basis for determining "sufficient sums."  Moreover, if "actual sums" were the standard, there would have been no need for this

---

[11]     Therefore, we respectfully disagree with the Dissent that the dictionary definition of "sufficient" provides a judicially discoverable and manageable standard for determining "sufficient sums."  Dissent Section II.A.3.  This court previously rejected that standard in Nelson I.

court, in Nelson I, to hold nonjusticiable the determination of sufficient sums for the other three enumerated purposes in Article XII, Section 1.  There would also have been no need for Delegate De Soto to state that the $1.3 to 1.6 million figure could be adjusted for inflation, as any present calculation of "actual sums" would not need to be adjusted for inflation. Again, the Constitutional Convention history supports that the only "judicially discoverable and manageable standard" for determining "sufficient sums" for DHHL's administrative and operating expenses in 1978 was the $1.3 to 1.6 million baseline identified by the delegates, adjusted for inflation.

In short, the Legislature and State Defendants are correct that the circuit court deviated from Nelson I's standard for determining "sufficient sums" for DHHL's administrative and operating expenses:  the 1978 baseline level of $1.3 to 1.6 million, adjusted for inflation.

Because the circuit court rejected this method of calculating sufficient sums, it made no finding as to what $1.3 to 1.6 million, adjusted for inflation for the 2015-2016 fiscal year, would be.  We note that, at various points during the remanded proceedings, the State Defendants calculated $1.3 to 1.6 million adjusted for inflation to be over $4.9 million, while the legislature calculated it to be $5.8 million.

This court is not in a position to make the ultimate factual finding. Rather, "[w]here findings are infirm because of an erroneous view of the law, a remand is the proper course unless the record permits only one resolution of the factual issue." Wilart Assocs. v. Kapiolani Plaza, Ltd., 7 Haw. App. 354, 360, 766 P.2d 1207, 1211 (1988) (citation omitted). Here, the record does not permit only one resolution of the factual issue.

Therefore, we vacate the circuit court's First Amended Final Judgment, Final Judgment, and underlying orders. This case is remanded to the circuit court for further proceedings. On remand, the circuit court shall determine whether the State Defendants have provided "sufficient sums" for DHHL's administrative and operating budget using the only judicially discoverable and manageable standard identified in Nelson I: the 1978 baseline of $1.3 to 1.6 million, adjusted for inflation.

## V. Conclusion

For the foregoing reasons, the circuit court's First Amended Final Judgment, Final Judgment, and underlying orders are vacated, and this case is remanded to the circuit court to determine whether the State Defendants have provided "sufficient sums" for DHHL's administrative and operating budget for the 2015-2016 fiscal year using the only judicially discoverable and

29

manageable standard identified in <u>Nelson I</u>:   the 1978 baseline

of $1.3 to 1.6 million, adjusted for inflation.

Sharla Ann Manley                   /s/ Mark E. Recktenwald
and Summer L.H. Sylva
for plaintiffs-appellees/           /s/ Paula A. Nakayama
cross-appellants



                                    /s/ Sabrina S. McKenna

Charleen M. Aina
for defendants-appellants/          /s/ Richard W. Pollack
cross-appellees

Melvyn M. Miyagi, Brian A.
Kang, and Ross T. Shinyama
for defendants-appellees/
cross-appellees

Mark J. Bennett
for amicus curiae
Hawai'i State Legislature